IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JEANNE K. ENDO,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED PUBLIC WORKERS, AFSCME LOCAL 646, AFL-CIO,<br><br>        Defendant.<br><br>UNITED PUBLIC WORKERS, AFSCME LOCAL 646, AFL-CIO,<br><br>    Third-Party Plaintiff,<br><br>    v.<br><br>GARY W. RODRIGUES,<br><br>    Third-Party Defendant. | CIVIL NO. 03-00563 LEK<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

### I.   INTRODUCTION

Beginning on April 20, 1993, Plaintiff has been employed as the accountant to Defendant United Public Workers, AFSCME Local 646, AFL-CIO ("UPW"). During Plaintiff's employment, Third-Party Defendant Gary W. Rodrigues ("Rodrigues") was the State Director for the UPW.

Plaintiff alleges that throughout the time she worked under Rodrigues, she was subjected to a hostile work environment and sexual harassment. Plaintiff alleges that due to Rodrigues'

unchecked power within UPW, women who refused Rodrigues' requests for sexual favors were retaliated against, and women who submitted were rewarded with favorable treatment. Moreover, Plaintiff alleges that Rodrigues pressured her for sexual favors, including intercourse, as well as touching her breasts and buttocks.

As a result, Plaintiff filed this action against UPW alleging unlawful sex discrimination and harassment, as well as unlawful reprisal in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq.

Plaintiff seeks an order to allow her to testify as to her observations of sexual harassment of other female UPW employees by Rodrigues, as well as to what certain female UPW employees told Plaintiff about the sexual harassment they were subjected to from Rodrigues.

## II. ARGUMENT

### A. Federal Rules of Evidence ("FRE"), Generally

FRE 401, Definition of "Relevant Evidence," states:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

FRE 402, Relevant Evidence Generally Admissible; Irrelevant Evidence Inadmissible, states:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of

2

the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

FRE 404, Character Evidence Not Admissible To Prove Conduct; Exceptions; Other Crimes, states in part:

(a) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
   (1) Character of accused. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same, or if evidence of a trait of character of the alleged victim of the crime is offered by an accused and admitted under Rule 404 (a)(2), evidence of the same trait of character of the accused offered by the prosecution;
   (2) Character of alleged victim. Evidence of a pertinent trait of character of the alleged victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first aggressor;
   (3) Character of witness. Evidence of the character of a witness, as provided in rules 607, 608, and 609.

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. *It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident*, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of

> trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

### B. Evidence of Sexual Harassment of Other UPW Employees by Rodrigues Is Relevant

In <u>Hirase-Doi v. U.S. West Communications, Inc.</u>, 61 F.3d 777 (10th Cir. 1995), plaintiff sued her employer alleging hostile work environment and sexual harassment in violation of Title VII. Coleman, a male coworker, repeatedly sexually harassed female employees and the employer was notified about some of these incidents. Coleman engaged in verbal and written sexually offensive behavior against plaintiff, as well as attempts to touch her breasts, and later to grab her legs. In addition, plaintiff observed Coleman approach and flirt with several female employees. Plantiff reported Coleman's behavior to her union representative, per employer's policy. The district court granted summary judgment in the employer's favor. <u>Id.</u> at 781.

On appeal, the employer argued that plaintiff could not rely on Coleman's harassment of other workers to establish a hostile work environment for herself. However, the Tenth Circuit rejected that argument as it previously held that evidence of a general work atmosphere, including evidence of harassment of other women, may be considered in evaluating a claim. <u>Id.</u> at 782, <u>citing</u>, <u>Hicks v. Gates Rubber Co.</u>, 833 F.2d 1406 at 1415-16 (10th Cir. 1987). A plaintiff may prove the existence of a

hostile work environment and sexual harassment "where the sexual conduct has the purpose or effect of unreasonably interfering with the individual's work performance or creating an intimidating, hostile, or offensive work environment." Id. (quoting, Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 at 67 (1986)).

Thus, the Tenth Circuit in Hirase-Doi determined that plaintiff may establish the existence of a genuine issue of material fact as to whether she was subjected to a hostile work environment based on evidence of Coleman's sexually offensive conduct toward herself and/or others in her office provided she was aware of such conduct. Plaintiff had produced such evidence through her affidavit alleging Coleman's verbal and written comments, his attempt to touch her breasts, and finally his grabbing of her. Moreover, plaintiff alleges she saw Coleman harass numerous other women during the relevant time period, and that Casper, a female worker, told plaintiff of Coleman's harassment of her, although Casper did not report it to management. Together, these allegations, if accepted, could provide the finder of fact with a reasonable basis upon which to find that plaintiff was subjected to a hostile work environment and sexual harassment. Id. at 782.

In Hurley v. Atlantic City Police Dep't, 174 F.3d 95 (3d Cir. N.J. 1999), cert. denied, 528 U.S. 1074, 120 S.Ct. 786, 145 L.Ed. 2d 663 (2000), the district court determined that

plaintiff, a female police officer, was subjected to sexual harassment and discrimination by the Atlantic City Police Department ("ACPD") and one of its captains. The district noted that FRE 401 allowed plaintiff to submit evidence to show that while she was not personally subjected to harassing conduct, her working conditions were nevertheless altered as a result of witnessing defendants' hostility toward other women at the workplace. On appeal, defendants' argued, in part, that the district court abused its discretion under FRE 403 by admitting evidence of alleged misconduct to which plaintiff was not exposed. Id. at 102-107.

However, the Third Circuit in Hurley disagreed. Evidence that other women other than plaintiff were subjected to a hostile work environment clearly meet FRE 401's requirement in a number of situations. For example, a plaintiff may show that while she was not personally subjected to harassing conduct, her working conditions were nevertheless altered as a result of witnessing a defendant's hostility toward other women in the workplace. Id. at 110.

Moreover, the Third Circuit in Hurley stated that a plaintiff's knowledge of harassment or pervasively sexist attitudes is not, however, a requirement for admitting testimony on those subjects in a harassment suit. Evidence of harassment of other women and widespread sexism is also probative of "whether one of the principal non-discriminatory reasons asserted

by [an employer] for its actions was in fact a pretext for . . . discrimination." Id. at 110, (quoting, Glass v. Philadelphia Elec. Corp., 34 F.3d 188, 194 (3rd Cir. 1994)); citing, Heyne v. Caruso, 69 F.3d 1475, 1480 (9th Cir. 1995). Moreover, in FRE 403 terms, such evidence is highly probative, hence it is unlikely that any putative prejudice therefrom will be unfair or will outweigh its value. Id. at 110.

The Third Circuit in Hurley further stated:

> Evidence of other acts of harassment is extremely probative as to whether the harassment was sexually discriminatory and whether the ACPD knew or should have known that sexual harassment was occurring despite the formal existence of an anti-harassment policy. Neither of these questions depends on the plaintiff's knowledge of incidents; instead, they go to the motive behind the harassment, which may help the jury interpret otherwise ambiguous acts, and to the employer's liability. This kind of evidence is particularly important given the ACPD's main defenses at trial, which were that the incidents of abuse Hurley suffered were trivial horseplay to which both men and women were subjected and that its written sexual harassment policy was sufficient to insulate it from liability. Contrary to the ACPD's position, it is implausible in the extreme that Hurley was somehow immune from the pervasive sexism at the ACPD, as it was described by both female and male officers.
>
> The challenged evidence creates a basis for an inference that Hurley was targeted for abuse because she was a woman. It also gives reason to infer that the ACPD knew or should have known not only what was happening to its female officers but also, and most importantly, that the written sexual harassment policy was ineffective, and

> patently so. Indeed, it is hard to imagine evidence more relevant to the issue of whether a sexual harassment policy was generally effective than evidence that male officers did not respect it and that female officers were not protected by it.
>
> Officer Rando and Ms. Cardy, for example, both testified about the dismissive and even retaliatory treatment they experienced when they reported male officers' misbehavior, and this was relevant, probative evidence that the ACPD was consistently insensitive to female employees' experiences of harassment. This evidence remains highly relevant under [Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed. 2d 633 (1998)] and [Faragher v. City of Boca Raton, 524 U.S. 775 (1998)].
>
> Aside from its relevance to the issue of whether the ACPD is liable for the hostile environment Hurley encountered, the evidence is also relevant to her intentional sex discrimination, quid pro quo, and retaliation claims. The general atmosphere of sexism reflected by the challenged evidence is quite probative of whether decision makers at the ACPD felt free to take sex into account when making employment decisions, when deciding whether to abuse their positions by asking for sexual favors, and when responding to sexual harassment complaints. As [Glass v. Philadelphia Elec. Co., 34 F.3d 188 (3rd Cir. 1994)] held, evidence of pervasive sexual harassment makes retaliation claims more credible, because harassers may be expected to resent attempts to curb their male prerogatives.

Id. at 111-112 (citations omitted).

In Garvey v. Dickinson College, 763 F.Supp. 799 (M.D. Pa. 1991), plaintiff employee alleged that she was subjected to sexual harassment and discrimination by her employer, her supervisor and the college dean. Defendants sought to exclude

8

evidence about the supervisor's alleged harassment of students and other female staff members. They argued that such evidence is irrelevant to the issues before the court, and its probative value is outweighed by its prejudicial tendencies under FRE 403. Id. at 801.

The court in Garvey noted that in an employment discrimination case, one element of the plaintiff's case is showing that she was intentionally discriminated in the workplace. To prove intentional discrimination, she must show state of mind. State of mind can be proven through circumstantial evidence such as evidence of past conduct or prior incidents. Id. at 801 (citations omitted).

Although evidence of character traits or prior wrongs is generally inadmissible to show that a person acted in conformity therewith on a particular occasion, FRE 404 permits the use of such evidence to prove motive or intent. Evidence of the supervisor's alleged harassment of others is clearly relevant because it tends to show his attitude toward women and his treatment of them at the college. Id. at 801.

The court in Garvey noted that such evidence is subject to the balancing requirements of FRE 403, but such rulings are best made at the time of trial when the court has all relevant considerations before it. Id. at 802.

9

In <u>Waterson v. Plank Road Motel Corp.</u>, 43 F.Supp. 2d 284 (N.D. N.Y. 1999), plaintiff, a hotel employee, alleged that she was subjected to sexual harassment and was terminated under false pretenses pursuant to a discriminatory purpose. Defendants moved to bar testimony of Malinowski, a former employee, who would have testified as to her own experiences of alleged sexual harassment and discrimination as irrelevant. Moreover, Malinowski filed her own complaint against defendants which she settled and about which signed a nondisclosure agreement. <u>Id.</u> at 287.

The court in <u>Waterson</u> noted that one of the critical issues in a hostile work environment claim is the nature of the work environment itself. Several courts have held that evidence of discriminatory conduct directed at other employees is relevant in establishing a generally hostile environment and intent to create such an environment. <u>Id.</u> at 288 (citations omitted). Thus, it was clear that Malinowski's testimony was relevant in showing the defendant's discriminatory attitude toward women as well as demonstrating a generally hostile work environment permeated with ridicule and insult. <u>Id.</u>

Also Malinowski's nondisclosure agreement only precluded disclosures of the terms of the settlement of the parties, not the circumstances giving rise to the complaint. <u>Id.</u> at 287 n.1. Defendants failed to show how the probative value of Malinowski's

testimony was substantially outweighed by the danger of unfair prejudice or confusion of issues. Id. at 287.

Here, Plaintiff seeks to give testimony as to her observations of sexual harassment by Rodrigues towards other female UPW employees, Merlene Akau and Tani Olaso (at the time, Tani Akiona). In addition, Plaintiff seeks to testify as to what Ms. Akau told her regarding being sexually harassed by Rodrigues.

As noted above, the courts have held that evidence of sexual harassment of other female employees is relevant to support a claim of sexual harassment under FRE 401 and 404. Moreover, the courts do not consider the probative value of such evidence outweighed the danger of unfair prejudice or confusion of the issues under FRE 403.

Thus, Plaintiff contends she should be permitted to testify as to her observations of sexual harassment by Rodrigues toward Ms. Akau and Ms. Olaso in order to establish that her working conditions were adversely affected. Additionally, Plaintiff should be permitted to testify as to what Ms. Akau told her about the sexual harassment they were subjected to by Rodrigues. Hirase-Doi, Hurley, supra.

### III. CONCLUSION

Therefore, for the forgoing reasons, Plaintiff requests that the Court grant her Motion.

DATED: Honolulu, Hawaii, April 22, 2008.

_____
CLAYTON C. IKEI
JERRY P.S. CHANG

Attorneys for Plaintiff
JEANNE K. ENDO