IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JEANNE K. ENDO, | ) CIVIL NO. 03-00563 LEK |
| Plaintiff, | ) MEMORANDUM OF LAW IN SUPPORT OF ) MOTION |
| v. | ) |
| UNITED PUBLIC WORKERS, AFSCME LOCAL 646, AFL-CIO, | ) |
| Defendant. | ) |
| UNITED PUBLIC WORKERS, AFSCME LOCAL 646, AFL-CIO, | ) |
| Third-Party Plaintiff, | ) |
| v. | ) |
| GARY W. RODRIGUES, | ) |
| Third-Party Defendant. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

I. **INTRODUCTION**

Beginning on April 20, 1993, Plaintiff has been employed as the accountant to Defendant United Public Workers, AFSCME Local 646, AFL-CIO ("UPW"). During Plaintiff's employment, Third-Party Defendant Gary W. Rodrigues ("Rodrigues") was the State Director for the UPW.

Plaintiff alleges that throughout the time she worked under Rodrigues, she was subjected to a hostile work environment and sexual harassment. Plaintiff alleges that due to Rodrigues' unchecked power within UPW, women who refused Rodrigues' requests for sexual favors were retaliated against, and women who

submitted were rewarded with favorable treatment. Moreover, Plaintiff alleges that Rodrigues pressured her for sexual favors, including intercourse, as well as touching her breasts and buttocks.

As a result, Plaintiff filed this action against UPW alleging unlawful sex discrimination and harassment, as well as unlawful reprisal in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq.

On November 19, 2002, Rodrigues was convicted by a jury in the U.S. District Court for the District of Hawaii on 101 federal charges of fraud and swindles (mail fraud), 18 U.S.C. § 1341 (counts 1-50), embezzlement of assets, 29 U.S.C. § 501 (counts 51-55), health care fraud, 18 U.S.C. § 1347 (count 56), money laundering-interstate commerce, 18 U.S.C. § 1956 (counts 57-100), and employee benefits fraud, 18 U.S.C. § 1954 (count 102), in Criminal No. 01-00078 DAE. On September 30, 2003, the Court sentenced Rodrigues to imprisonment of 60 months as to Counts 1-55, 64 months as to Counts 56-100, and 36 months as to Count 102, with all such terms to run concurrently, supervised release for 3 years as to Counts 1-100 and 1 year as to Count 102, with all such terms to run concurrently. Additionally, Rodrigues owes $378,103.63 to UPW for restitution, and a $50,000.00 fine, among other things.

After the verdict, George Yasumoto ("Yasumoto"), UPW's State President, informed the members of UPW's Executive Board ("Board") that he was calling a special meeting at 10:00 a.m. on November 22, 2002 for the purpose of suspending Rodrigues from office on the basis of the jury verdict. Almost immediately after Yasumoto gave his notice, Rodrigues notified the Board through his deputy, Dwight Takeno, that he was calling a special meeting of the Board that same day at 9:00 a.m. to have it confirm his continuation in office pending sentencing. (See, Chang Decl., Ex. "A" at 4.)

When AFSCME International President Gerald W. McEntee ("Pres. McEntee") learned of these developments at UPW, he immediately acted to suspend Rodrigues as UPW State Director pursuant to Article V, Section 13 of the International Constitution. The letter notifying Rodrigues of his suspension was faxed to him at UPW headquarters at around noon, local time, on November 21, 2002. Id. at 4.

Upon learning of Rodrigues' suspension, Yasumoto decided to cancel the special Board meeting scheduled for November 22, and attempted to advise the Board members of the cancellation. On the morning of November 22, Yasumoto learned that UPW's staff was countermanding his cancellation of the Board meeting. Yasumoto contacted the International Union to find out whether he had the authority to cancel the special Board meeting. Pres. McEntee

responded in a letter faxed before the special meeting that Yasumoto had the authority to cancel the meeting. Id. at 5.

Despite Yasumoto's attempt to tell the Board members outside UPW headquarters that the meeting was cancelled, Rodrigues told the members to enter the building and proceed with the meeting. The Board called an informational meeting, and created a new agenda which it voted to suspend Yasumoto for leaving the meeting and approved Rodrigues recommendation to appoint his deputy, Dwight Takeno, as his successor. Id. at 5-9.

On December 5, 2002, Pres. McEntee placed the UPW under administratorship pursuant to Article IX, Section 36 of the International Constitution. The primary reasons for the administratorship were:

> (1) Rodrigues' continued involvement in, and influence over the affairs of UPW after he was found guilty of more than 100 crimes against the union and its members and despite the fact that he had been suspended from office by President McEntee; (2) constitutional violations committed by UPW in the course of the November 22 meeting of the board; and (3) the threat that the funds of UPW would be further dissipated as a result, as well as by the payment of Rordrigues' claims for almost $700,000 in vacation and sick leave. Ample evidence was presented to support all of these reasons.

Id. at 1, 11-12.

Pursuant to the International Constitution, the matter was referred to the Judicial Panel for hearing in Case No. 02-121. Id. at 1. On June 4, 2003, the Judicial Panel issued its

decision which affirmed Pres. McEntee's decision to impose administratorship over the UPW. Id. at 18.

Plaintiff hereby submits this motion in limine to admit evidence regarding Rodrigues' removal from the UPW in the form of the Judicial Panel's decision.

**II. ARGUMENT**

    **A.    Federal Rules of Evidence ("FRE"), Generally**

FRE 401, Definition of "Relevant Evidence," states:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

FRE 402, Relevant Evidence Generally Admissible; Irrelevant Evidence Inadmissible, states:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

FRE 404, Character Evidence Not Admissible To Prove Conduct; Exceptions; Other Crimes, states:

> (a) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except: (1) Character of accused. In a criminal case, evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same, or if evidence of a trait of character of the alleged victim of the crime is offered

5

by an accused and admitted under Rule 404(a)(2), evidence of the same trait of character of the accused offered by the prosecution; (2) Character of alleged victim. In a criminal case, and subject to the limitations imposed by Rule 412, evidence of a pertinent trait of character of the alleged victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first aggressor; (3) Character of witness. Evidence of the character of a witness, as provided in Rules 607, 608, and 609.

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

**B.  The Judicial Panel's Decision is Relevant to Rodrigues' Credibility and Control of the UPW**

Here, as the Judicial Panel's decision notes, upon Rodrigues' criminal conviction, Pres. McEntee suspended Rodrigues in his capacity as the UPW's State Director. Rather than accept the suspension, Rodrigues effectively directed the Board to suspend Yasumoto, and appoint Takeno as the interim State Director, thereby continuing his control of the UPW.

6

Pres. McEntee decided to place the UPW under administratorship despite his suspension of Rodrigues for several reasons:  First, Rodrigues' continued involvement in and influence over the affairs of UPW after he was found guilty of more than a hundred crimes against the Union and its members. Second, the constitutional violations committed by UPW in the course of the November 22 meeting of the Board.  Finally, the threat that almost $700,000 of UPW funds would be dissipated because of Rodrigues' claim for that amount in vacation and sick leave.

In accordance with the International Constitution, the Judicial Panel held a hearing on the administratorship.  The Judicial Panel made a finding of fact and determined that Pres. McEntee's decision to impose administratorship was justified.

Plaintiff contends the Judicial Panel's decision is relevant to the issues of Rodrigues' credibility and control of the UPW in this matter in that Pres. McEntee determined, and the Judicial Board agreed that Rodrigues would continue to control the UPW unless it was placed under administratorship.

\\
\\
\\
\\
\\

## III. CONCLUSION

Therefore, for the foregoing reasons, Plaintiff requests that the Court grants her Motion.

DATED:     Honolulu, Hawaii, April 22, 2008.

                                                                             /s/
                                       CLAYTON C. IKEI
                                       JERRY P.S. CHANG

                                       Attorneys for Plaintiff
                                       JEANNE K. ENDO