KOSHIBA AGENA & KUBOTA

JAMES E. T. KOSHIBA          768-0
CHARLES A. PRICE            5098-0
ANDREW D. STEWART          7810-0
2600 Pauahi Tower
1003 Bishop Street
Honolulu, Hawaii 96813
Telephone No.:     523-3900
Facsimile No.:     526-9829

Attorneys for Defendant
UNITED PUBLIC WORKERS,
AFSCME, LOCAL 646, AFL-CIO

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JEANNE ENDO,                          )<br>                                      )<br>        Plaintiff,                    )<br>                                      )<br>    vs.                               )<br>                                      )<br>UNITED PUBLIC WORKERS,                 )<br>AFSCME LOCAL 646, AFL-CIO,            )<br>                                      )<br>        Defendant,                    )<br>                                      )<br>    vs.                               )<br>                                      )<br>GARY W. RODRIGUES,                    )<br>                                      )<br>    Third-Party Defendant.            )<br>                                      )<br>_____)       | CIVIL NO. CV03-00563 SPK KSC<br><br>DEFENDANT'S PROPOSED<br>JURY INSTRUCTIONS |

## DEFENDANT'S PROPOSED JURY INSTRUCTIONS

Defendant United Public Workers, AFSCME Local 646, AFL-CIO ("UPW") hereby proposes the following jury instructions:

(1)    "United States District Court for the District of Hawaii, General Federal Jury Instructions in Civil Cases (for United States Magistrate Judges)" 1.1 through 5.3; 7.1; 8.1 through 8.5; and 8.8 through 9.3.

(2)    "Ninth Circuit Model Civil Jury Instructions: Instructions on the Trial Process": Nos. 1.5 through 1.8; and 1.10.

(3)    The following attached "Ninth Circuit Model Civil Jury Instructions: Civil Rights – Title VII – Employment Discrimination; Harassment; Retaliation": Nos. 10.2A; 10.2B; 10.2C; 10.3; 10.4A.1; and 10.4B.

(4)    The following attached "Hawaii Civil Model Jury Instructions": Nos. 15.1 through 15.6.

(5)    The following attached proposed special jury instructions.

UPW reserves the right to withdraw or add to these instructions based on the evidence presented.

DATED:  Honolulu, Hawaii, April 28, 2008.

JAMES E.T. KOSHIBA
CHARLES A. PRICE
ANDREW D. STEWART
Attorneys for Defendant
UNITED PUBLIC WORKERS, AFSCME
LOCAL 646, AFL-CIO

## HOSTILE WORK ENVIRONMENT – HARASSMENT BECAUSE OF PROTECTED CHARACTERISTICS – ELEMENTS

The plaintiff seeks damages against the defendant for a <u>sexually</u> hostile work environment while employed by defendant.  In order to establish a sexually hostile work environment, the plaintiff must prove each of the follow elements by a preponderance of the evidence:

1.      the plaintiff was subjected to <u>sexual advances, requests for sexual conduct, or other verbal or physical conduct of a sexual nature;</u>

2.      the conduct was unwelcome;

3.      the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create a <u>sexually</u> abusive or hostile work environment;

4.      the plaintiff perceived the working environment to be abusive or hostile; and

5.      a reasonable <u>woman</u> in the plaintiff's circumstances would consider the working environment to be abusive or hostile.

Whether the environment constituted a <u>sexually</u> hostile work environment is determined by looking at the totality of the circumstances, including the frequency of the harassing conduct, the severity of the conduct, whether the conduct was physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interfered with an employee's work performance.

Ninth Circuit Model Civil Jury Instructions 10.2A (2007) (with underlined insertions).

1

## HOSTILE WORK ENVIRONMENT CAUSED BY SUPERVISOR – CLAIMS BASED UPON VICARIOUS LIABILTY – TANGIBLE EMPLOYMENT ACTION – AFFIRMATIVE DEFENSE

An employer may be liable when a supervisor with immediate or successively higher authority over the employee creates a <u>sexually</u> hostile work environment for that employee.  The plaintiff claims that <u>she</u> was subjected to a sexually hostile work environment by <u>Gary W. Rodrigues</u> and that <u>Gary W. Rodrigues</u> was <u>her immediate supervisor.</u>

The defendant denies the plaintiff's claim.  The plaintiff must prove <u>her</u> claim by a preponderance of the evidence.

In addition to denying the plaintiff's claim, the defendant has asserted an affirmative defense.  Before you consider this affirmative defense, you must first decide whether plaintiff has proven by a preponderance of the evidence that <u>she</u> suffered a tangible employment action as a result of harassment by the supervisor.

If you find that the plaintiff has proved that <u>she</u> suffered a tangible employment action as a result of harassment by a supervisor, you must not consider the affirmative defense.

If the plaintiff has not proved that <u>she</u> suffered a tangible employment action, then you must decide whether the defendant has proved by preponderance of the evidence each of the following elements:

1. the defendant exercised reasonable care to prevent and promptly correct the sexually harassing behavior, and

2. the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities to provided by the employer or unreasonably failed to otherwise avoid harm.

If the defendant proves these elements, the plaintiff is not entitled to prevail on this claim.

Ninth Circuit Model Civil Jury Instructions 10.2B (2007) (with underlined insertions).

2

## HOSTILE WORK ENVIRONMENT CAUSED BY NON-IMMEDIATE SUPERVISOR OR BY CO-WORKER – CLAIM BASED ON NEGLIGENCE

The plaintiff seeks damages from the defendant for a hostile work environment caused by <u>sexual</u> harassment. The plaintiff has the burden of proving both of the following element by a preponderance of the evidence:

1.  the plaintiff was subjected to a sexually hostile work environment by a <u>non-immediate supervisor</u>; and

2.  the defendant or a member of the defendant's management knew or should have known of the harassment and failed to take prompt, effective remedial action reasonably calculated to end the harassment.

A person is a member of management if the person has substantial authority and discretion to make decisions concerning the terms of the harasser's employment or the plaintiff's employment, such as authority to counsel, investigate, suspend, or fire the accused harasser, or to change the conditions of the plaintiff's employment. A person who lacks such authority is nevertheless part of management if he or she has an official or strong duty in fact to communicate to management complaints about work conditions. You should consider all the circumstances in this case in determining whether a person has such a duty.

The defendant's remedial action must be reasonable and adequate. Whether the defendant's remedial action is reasonable and adequate depends upon the remedy's effectiveness in stopping the individual harasser from continuing to engage in such conduct and in discouraging other potential harassers from engaging in similar unlawful conduct. An effective remedy should be proportionate to the seriousness of the offense.

If you find that the plaintiff has proved both of the elements on which the plaintiff has the burden of proof, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove either of these elements, your verdict should be for the defendant.

3

Ninth Circuit Model Civil Jury Instructions 10.2C (2007) (with underlined insertions).

## "TANGIBLE EMPLOYMENT ACTION" DEFINED

Tangible employment actions are the means by which a supervisor brings the official power of the enterprise to bear on subordinates. A tangible employment action requires an official act of the enterprise, a company act. A tangible employment action consists of a significant change in employment status such as [firing] [failing to promote] [reassignment] [a significant change in responsibilities] [undesirable reassignment] or [a significant change in benefits]. [A tangible employment action occurs when a superior obtains sexual favors from an employee by conditioning continued employment on participation in unwelcome acts.]

Ninth Circuit Model Civil Jury Instructions 10.4B (2007).

5

## "SUPERVISOR" - DEFINED

A "supervisor" is a person with immediate or successively higher authority over the employee. The essence of supervisory status is the authority to affect terms and conditions of employment, primarily consisting of the power to hire, fire, demote, promote, transfer or discipline employees.

A "supervisor" is any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

O'Malley, Grenig & Lee, Federal Jury Practice and Instructions § 171.44 (5th ed. 2001) (citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)) (paragraph in bracket is from 19 U.S.C.A. § 152(11) of the National Labor Relations Act); *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1034 (7th Cir. 1998) ("Cases subsequent to *Faragher* and *Ellerth* indicate that whether an individual is 'a supervisor with immediate (or successively higher) authority' is dependent upon whether his authority was of a substantial magnitude. *See, e.g., Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 592 (5th Cir.1998) (employee was victim's supervisor under *Faragher* and *Ellerth* where he had the authority to discharge her); *Phillips v. Taco Bell Corp.*, 156 F.3d 884, 888 (8th Cir.1998) (harasser, who was the store manager, was a supervisor based on the authority he had over the plaintiff). The Fourth Circuit has recently held that the *Ellerth-Faragher* standard of liability applied where the harasser 'could hire and fire sales representatives,' such as the plaintiff. *See Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 179 (4th Cir.1998). Hence, it is manifest that the essence of supervisory status is the authority to affect the terms and conditions of the victim's employment. This authority primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee.").

6

## "REASONABLE CARE" - DEFINED

Proof of the following facts will suffice to establish the exercise of reasonable care by UPW, the employer:

- UPW had promulgated an explicit policy against sexual harassment in the workplace;

- That policy was fully communicated to its employees; and

- That policy provided a reasonable avenue for Endo to make a complaint to higher management

On the other hand, proof that Endo did not follow a complaint procedure provided by UPW, employer, will ordinarily be enough to establish that Endo "unreasonably failed" to take advantage of a corrective opportunity.

Federal Jury Practice and Instructions (5th ed. 2001) § 171.41 (Discrimination in Employment – Reasonable Care) (citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 762 (1998); *Faragher v. City of Boca Raton*, 524, U.S. 775, 807 (1998).

7

## REASONABLE WOMAN STANDARD

In determining whether a hostile work environment existed, you must consider the evidence from the perspective of a reasonable woman. This is an objective standard and requires you to look at the evidence from the perspective of a reasonable woman's reaction to a similar environment under similar circumstances. You cannot view the evidence from the perspective of an overly sensitive person. Instead, you must consider the total circumstances and determine whether a reasonable woman would consider the conduct as sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

Federal Jury Practice and Instructions (5th ed. 2001) § 171.41 ("Discrimination in Employment – Reasonable Person") (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 (1993) ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment---an environment that a reasonable person would find hostile or abusive---is beyond Title VII's purview.") (modified to reflect "reasonable woman" standard adopted by the Ninth Circuit in *Ellison v. Brady*, 924 F.2d 872, 879 - 81 (9th Cir. 1991) ("In order to shield employers from having to accommodate the idiosyncratic concerns of the rare hyper-sensitive employee, we hold that a female plaintiff states a prima facie case of hostile environment sexual harassment when she alleges conduct which a reasonable woman would consider sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.") (footnote omitted) Underlined language used to replace the following sentence: "Instead, you must consider the total circumstances and determine whether the alleged harassing behaviour could be objectively classified as the kind of behaviour that would seriously affect the psychological well-being of a reasonable person.").

8

## BLUE COLLAR ENVIRONMENT

You must evaluate Endo's claim of sexual harassment in the context of a blue collar environment where crude language is commonly used by male and female employees.

*Gross v. Burggraf Construction Co.*, 53 F.3d 1531, 1539 (10th Cir. 1995) ("Accordingly, we must evaluate Gross' claim of gender discrimination in the context of a blue collar environment where crude language is commonly used by male and female employees. Speech that might be offensive or unacceptable in a prep school faculty meeting, or on the floor of Congress, is tolerated in other work environments. We agree with the following comments by the district court in *Rabidue v. Osceola Refining Co.*, 584 F. Supp. 419, [430] (E.D. Mich. 1984), *aff'd* 805 F.2d 611 (6th Cir. 1986), *cert. denied*, 481 U.S. 1041, 107 S. Ct. 1983, 95 L.Ed.2d 823 (1987): [T]he standard for determining sex[ual] harassment would be different depending upon the work environment. Indeed, it cannot seriously be disputed that in some work environments, humor and language are rough hewn and vulgar. Sexual jokes, sexual conversations and girlie magazines may abound. Title VII was not meant to—or can—change this. It must never be forgotten that Title VII is the federal court mainstay in the struggle for equal employment opportunity for the female workers of America. But it is quite different to claim that Title VII was designed to bring about a magical transformation in the social mores of American workers.).

9

## STATUTE OF LIMITATIONS AND CONTINUING VIOLATION

A plaintiff can only recover on a hostile work environment claim for non-discrete acts, which took place within 300 days prior to the filing of her EEOC complaint, unless the plaintiff can show the existence of a continuing violation. Because Endo filed her EEOC complaint on April 5, 2002, she may only recover damages on her hostile work environment claim for non-discrete acts occurring on or after June 9, 2001.  However, Endo may recover damages on her hostile work environment claim for non-discrete acts occurring prior to June 9, 2001 if you determine that such non-discrete acts are related to other non-discrete acts occurring on or after June 9, 2001, and together form a single unlawful employment practice (*i.e.*, a continuing violation).  Otherwise, evidence presented of acts that occurred prior to June 9, 2001 serve only to establish relevant background information.  You may not award damages to Endo on her hostile environment claim for any discrete acts.

42 U.S.C. § 200e-5 (c); *Mems v. City of St. Paul, Dept. of Fire and Safety Services,* 327 F.3d 771, 783 (8th Cir. 2003), *r'hrg denied.*  ("[E]ach Plaintiff may only recover damages on his race discrimination claim for unlawful acts occurring within the limitations period listed on his Special Verdict Form.  Evidence has been presented of acts that occurred outside of this period; however, such acts serve only to establish relevant background information.  You may not award damages for any acts which occurred outside of the period listed on each Plaintiff's Special Verdict Form."); *Nat'l Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act.").

## DISCRETE AND NON-DISCRETE ACTS

Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice" that is composed of a single discrete act.

Examples of "discrete acts" include: termination, failure to promote, denial of transfer, refusal to hire, refusing to grant vacation requests, threatening disciplinary action while on medical leave, and leaving a negative performance evaluation in an employee's personnel file.

A hostile work environment claim, on the other hand, is composed of a series of separate non-discrete acts that collectively constitute one "unlawful employment practice." Its very nature involves repeated conduct and occurs over a series of days or perhaps years, and in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Thus, a hostile environment claim is based on the cumulative effect of individual non-discrete acts.

*Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"); *Id.* at 115 ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative effect of individual acts.") (citations omitted); *Porter v. Calif. Dept. of Corrections*, 383 F.3d 1018, 1028 (9th Cir. 2004) ("When the ashes are sifted, the bulk of the conducted attributed by Porter to the CDC and its agents falls into the category of discrete acts; for instance, refusing to grant Porter's requests for vacation or holidays, requiring Porter to be tested for tuberculosis by her own physician, threatening disciplinary action while she was on medical leave, leaving a negative performance evaluation in her personnel file, and instructing her to enter the work site through the back gate.").

11

## RETALIATION—ELEMENTS AND BURDEN OF PROOF

The plaintiff seeks damages against the defendant for retaliation. The plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1.  the plaintiff engaged in or was engaging in an activity protected under federal law, that is [*activity*];

2.  the employer subjected the plaintiff to an adverse employment action, that is [*adverse employment action*]; and

[3.  the plaintiff was subjected to the adverse employment action because of her [*participation in protected activity*.]

If you find that the plaintiff has proved all three of these elements, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict should be for the defendant.]

*or*

[3.  the protected activity was a motivating factor in the adverse employment action.

If you find that the plaintiff has failed to prove any of these elements, your verdict should be for the defendant. If the plaintiff has proved all three of these elements, the plaintiff is entitled to your verdict, unless the defendant has proved by a preponderance of the evidence that it would have made the same decision even if the plaintiff's participation in a protected activity had played no role in the employment decision. In that event, the defendant is entitled to your verdict, even if the plaintiff has met her burden of proof on all three of the above elements.]

Ninth Circuit Model Civil Jury Instructions 10.3 (2007) (with underlined insertions).

12

## "ADVERSE EMPLOYMENT ACTION" IN RETALIATION CASES

An action is an adverse employment action if a reasonable employee would have found the action materially adverse, which means it might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

Ninth Circuit Model Civil Jury Instructions 10.4.A.1 (2007)

13

## "PROTECTED ACTIVITY" - DEFINED

Protected activity may be an informal or formal complaint made, or other opposition engaged in, by the Plaintiff, in response to an act of sexual harassment by the employer or the employer's agent.

However, not every complaint about an employer's action constitutes a protected activity; retaliation in response to an activity that is not protected does not support a retaliation claim. In order to be protected activity, Endo's opposition must have been directed toward sexual harassment by UPW. Opposition to sexual harassment by a co-employee cannot be the basis of a retaliation claim. Only reasonable opposition to an employer's actions are protected by Title VII; unreasonable, bad faith or malicious complaints are not protected.

Commentary to Ninth Circuit Model Civil Jury Instructions (Approved 8/2004), 12.3A (citing *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 506 (9th Cir. 2002) (stating that informal as well as formal complaints or demands are protected activity under Title VII); *Silver v. KCA, Inc.*, 586 F.2d 138, 140-4 (9th Cir. 1978) (determining that employee's opposition to a racially discriminatory act of a co-employee cannot be the basis for a retaliation action); *Wrighten v. Metropolitan Hosps., Inc.*, 726 F.2d 1346, 1354-56 (9th Cir. 1984) (stating that only reasonable opposition to the employment practice is protected by Title VII); *Funai v. Brownlee*, 369 F.Supp.2d 1222, 1243 (D. Haw. 2004) ("In order to be protected activity, the Plaintiff's opposition must have been directed toward a discriminatory act by the Defendant employer. Opposition to a discriminatory act of a co-employee cannot be the basis of a retaliation action. Only reasonable opposition to the employment practice is protected by Title VII; unreasonable, bad faith or malicious complaints are not protected.")

14

## LACHES

UPW raises the affirmative defense of laches; that is UPW contends that Endo waited too long in bringing suit and the UPW was unfairly prejudiced as a result of the delay. Laches is a defense that is similar to a statute of limitations, and prevents a plaintiff from presenting old claims that they have not pursued for many years.

To prove laches, UPW must establish by a preponderance of the evidence that:

1. Endo had knowledge of her right to file a sexual harassment claim;
2. Endo inexcusably or unreasonably delayed in filing the present lawsuit, and
3. UPW has been prejudiced by a belated assertion of her rights.

In presenting its defense, UPW is entitled to a presumption of laches if Endo delayed filing suit more than two years. The two-year time period for the presumption of laches is based on Hawaii's statute of limitations for sexual harassment claims. The presumption of laches means that it is presumed that the delay was unreasonable, and that UPW was prejudiced by the delay.

If Endo delayed for more than two years between the time of the incidences giving rise to her sexual harassment and the filing of the present lawsuit on October 17, 2003, it creates a presumption in UPW's favor, and Endo has the burden of presenting evidence that she had a reasonable excuse for the delay.

If Endo can show she had a reasonable excuse, then you have to consider the case in its entirety to determine if there was laches. If Endo does not show a reasonable excuse, then the presumption of laches can be applied and you may find in favor of UPW on all or some of her claims.

If you decide that Endo has provided evidence that her delay in bringing the current lawsuit is justified, you will then consider the case in its entirety to decide whether laches should be applied because UPW has been unfairly prejudiced by Endo's delay.

15

In determining whether Endo's delay was unreasonable, you should consider the length of delay.

A defendant is prejudiced by a delay when the assertion of a claim available some time ago would cause defendant difficulty. Specifically in this case, UPW was unfairly prejudiced if Endo's delay caused it difficulty to defend itself in this lawsuit that would not have existed if Endo had not delayed. If you find that UPW was unfairly prejudiced by Endo's unreasonable delay, then you must apply the defense of laches.

*Bratton v. Bethelehem Steel Corp.*, 649 F.2d 658, 666 (9th Cir. 1980)("The defense of laches ' requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.') (quoting *Costello v. U.S.*, 365 U.S. 265, 282 (1961) ("We have held that laches may constitute a defense to a Title VII action . . . .")); *City of Davis v. Coleman*, 521 F.2d 661, 677 (9th Cir. 1975) ("An indispensable element of lack of diligence is knowledge, or reason to know, of the legal right, assertion of which is 'delayed.'"); *Jarrow Formulas, Inc. v. Nutritition Now, Inc.*, 304 (9th Cir. 2002) (applying California's three-year statute of limitations for fraud claims for determining whether presumption of laches exist, where Lanham Act violations consisted of on-going claims both within, as well as outside the limitations periods) ("[I]f the claim is filed after the analogous limitations period has expired, the presumption is that laches is a bar to suit.") ("The reasonableness of the plaintiff's delay is considered in light of the time allotted by the analogous limitations period."); *Shouse v. Pierce Co.*, 559 F.2d 1142, 1147 (9th Cir. 1977) ("Difficulties caused by the pendency of a lawsuit, and not by delay in bringing the suit do not constitute prejudice within the meaning of the laches doctrine."); Proposed Jury Instructions submitted in *The Mashantucket Pequot Tribe v. Redican*, Civil Action No. 3:02 CV 1828 (JCH) (D. Conn. 2005), 2005 WL 218485.

## PUNITIVE DAMAGES FOR TITLE VII CLAIM

Endo claims the acts of UPW were done with malice or reckless indifference to Endo's federally protected rights so as to entitle Endo to an award of punitive damages.

In some cases, punitive damages may be awarded for the purpose of punishing a defendant for its wrongful conduct and to deter others from engaging in similar wrongful conduct. However, so long as the employee who engaged in the sexually harassing conduct is not an alter ego of the employer, an employer may not be held liable for punitive damages because of discriminatory acts on the part of its managerial employees where those acts by such employees are contrary to the employer's own good faith efforts to comply with the law by implementing policies and programs designed to prevent such unlawful discrimination in the workplace.

If Endo has not proved that Rodrigues was an alter ego of UPW, then you must decide, an award of punitive damages would be appropriate in this case only if you find for Endo and then further find from a preponderance of evidence:

1.    That Rodrigues acted as a managerial employee within the scope of his employment; and

2.    That Rodrigues personally acted with malice or reckless indifference to Endo's federally protected rights; and

3.    That UPW itself had not acted in a good faith attempt to comply with the law by adopting policies and procedures designed to prohibit such discrimination in the workplace.

On the other hand, if Endo has proved that Rodrigues was an alter ego of UPW, then you must decide, an award of punitive damages would be appropriate in this case only if you find for Endo and then further find from a preponderance of evidence:

17

1.    That Rodrigues acted as a managerial employee within the scope of his employment; and

2.    That Rodrigues personally acted with malice or reckless indifference to Endo's federally protected rights.

If you find that punitive damages should be assessed against UPW, you may consider the financial resources of UPW in fixing the amount of such damages.

Punitive damages must bear a reasonable relationship to Endo's actual injury.  However, there is no simple way to link punitive to compensatory damages.  In determining a reasonable relationship to the actual injury, you must consider all relevant factors.  These include:

- The impact and severity of UPW's conduct.
- The amount of time UPW conducted itself in this manner.
- The amount of compensatory damages.
- The potential profits UPW may have made from UPW's conduct.
- The attitudes and actions of UPW's top management after the misconduct was discovered.
- The effect of the damage award on UPW's financial condition.

Federal Jury Practice and Instructions (5th ed. 2001) § 171.94 (Discrimination in Employment – Punitive Damages); *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1197-98 (9th Cir.2002) ("In Kolstad, the Supreme Court resolved a circuit split over the appropriate standard for determining the availability of punitive damages under Title VII by establishing a three-part inquiry to address when the evidence supports a punitive damages verdict . . . Under Title VII, the jury may award punitive damages if the moving party demonstrates that 'the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual . . . The Supreme Court also held that the plaintiff must 'impute liability for punitive damages to respondent.'  Under this step, the plaintiff must show that the intentional discrimination by an employee is attributable to the employer by using traditional agency principles, *e.g.*, that a managerial employee acted within the

18

scope of his or her employment . . . Finally, the Supreme Court clarified that the defendant employer may raise as an affirmative defense its good faith efforts to comply with Title VII, if such efforts were contrary to the actions of its managerial agents.") (citations omitted); *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 516 (9th Cir. 2000) ("Thus, the *Burlington* defense remains inapplicable as a defense to punitive damages when the corporate officers who engage in illegal conduct are sufficiently senior to be considered proxies of the company.").

19

## "ALTER EGO" - DEFINED

Where an employee serves in a supervisory position and exercises significant control over an employee's hiring, firing or conditions of employment, that individual operates as the alter ego of the employer, and the employer is liable for any unlawful employment practices of the individual even though what the supervisor is said to have done violates company policy.

*Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1232 (10th Cir. 2000) ("Defendant [Pro Bank] is a corporation.  A corporation may only act through natural persons as its agents or employees and, in general, any employee of a corporation may bind the corporation by his or her actions done and statements made while acting within the scope of his or her employment.  Where an employee such as Mr. Pocrnick serves in a supervisory position and exercises significant control over an employee's hiring, firing, or conditions of employment, that individual operates as the alter ego of the employer, and the employer is liable for any unlawful employment practices of the individual even though what the supervisor is said to have done violates company policy.").

20

## "MANAGERIAL EMPLOYEE" - DEFINED

In determining whether an employee is a "managerial employee", you should look at the type of authority that the employer has given to the employee, the amount of discretion that the employee has in what is done and how it is accomplished. An employee must be important but need not be the employer's top management, officer, or director to be acting as a managerial employee.

*Kolstad v. American Dental Association*, 527 U.S. 526, 543 - 544 (1999) ("'Unfortunately, no good definition of what constitutes a "managerial capacity" has been found,' and determining whether an employee meets this description requires a fact-intensive inquiry. 'In making this determination, the court should review the type of authority that the employer has given to the employee, the amount of discretion that the employee has in what is done and how it is accomplished.' Suffice it to say here that the examples provided in the Restatement of Torts suggest that an employee must be 'important,' but perhaps need not be the employer's 'top management, officers, or directors,' to be acting 'in a managerial capacity.'") (citations omitted).

21

## "SCOPE OF EMPLOYMENT" - DEFINED

Any act or omission of an agent is within the scope of employment if:

1. it is of the kind he is employed to perform;
2. it occurs substantially within the authorized time and space of his employment; and
3. is motivated, at least, in party, by a purpose to serve his employer.

Conduct of an employee is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the employer.

*Kolstad v. American Dental Assn.*, 527 U.S. 526, 543 - 544 (1999) ("The Restatement of Agency provides that even intentional torts are within the scope of an agent's employment if the conduct is 'the kind [the employee] is employed to perform,' 'occurs substantially within the authorized time and space limits,' and 'is actuated, at least, in part, by a purpose to serve the employer.' According to the Restatement, so long as these rules are satisfied, an employee may be said to act within the scope of employment even if the employee engages in acts 'specifically forbidden' by the employer and uses 'forbidden means of accomplishing results.'") (citing *Restatement (Second) Agency*, § 228 (1958)).

22

## PUNITIVE DAMAGES FOR STATE LAW CLAIM

Endo claims UPW acted intentionally, wilfully, wantonly, oppressively, maliciously, or with gross negligence, with respect to Endo's rights protected by state law so as to entitle Endo to an award of punitive damages.

In some cases punitive damages may be awarded for the purpose of punishing a defendant for its wrongful conduct and to deter others from engaging in similar wrongful conduct. However, so long as the employee who engaged in the sexually harassing conduct is not an alter ego of the employer, an employer may not be held liable for punitive damages because of discriminatory acts on the part of its managerial employees where those acts by such employees are contrary to the employer's own good faith efforts to comply with the law by implementing policies and programs designed to prevent such unlawful discrimination in the workplace.

If Endo has not proved that Rodrigues was an alter ego of UPW, then you must decide, an award of punitive damages would be appropriate in this case only if you find for Endo and then further find from a preponderance of evidence:

1.    That Rodrigues acted as a managerial employee within the scope of his employment; and

2.    That UPW itself had not acted in a good faith attempt to comply with the law by adopting policies and procedures designed to prohibit such discrimination in the workplace.

and from clear and convincing evidence:

3.    That Rodrigues personally acted intentionally, wilfully, wantonly, oppressively or with gross negligence.

On the other hand, if Endo has proved that Rodrigues was an alter ego of UPW, then you must decide, an award of punitive damages would be appropriate in this case only if you find for Endo and then further find from a preponderance of evidence:

23

1.    That Rodrigues acted as a managerial employee within the scope of his employment; and

and from clear and convincing evidence:

2.    That Rodrigues personally acted intentionally, wilfully, wantonly, oppressively or with gross negligence.

The proper measure of punitive damages under state law is (1) the degree of intentional, wilful, wanton, oppressive, malicious or grossly negligent conduct that formed the basis for your prior award of damages against that defendant and (2) the amount of money required to punish that defendant considering his/her/its financial condition.    In determining the degree of a particular defendant's conduct, you must analyze that defendant's state of mind at the time he/she/it committed the conduct which formed the basis for your prior award of damages against that defendant.  Any punitive damages awarded must be reasonable.

Federal Jury Practice and Instructions (5th ed. 2001) § 171.94 ("Punitive Damages"); *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 516 (9th Cir. 2000) ("Thus, the *Burlington* defense remains inapplicable as a defense to punitive damages when the corporate officers who engage in illegal conduct are sufficiently senior to be considered proxies of the company."); Hawaii Civil Jury Instruction (1999 edition) No. 8.12.

24

## INDEMNIFICATION UNDER RESPONDEAT SUPERIOR
## (UPW V. RODRIGUES)

UPW claims that Rodrigues should indemnify it, that is compensate UPW monetarily, for the damages, if any, Endo recovers against UPW on her state law retaliation claim.

Under Hawaii law, an employer held liable under respondeat superior is entitled to indemnification from its employee.

If you find in favor of Endo on her state law retaliation claim, UPW is entitled to prevail on its indemnification claim and recover from Rodrigues the full amount it is held liable to Endo, under the state law retaliation claim, if you find from a preponderance of evidence that:

1.    UPW must discharge a legal obligation owing to Endo;
2.    Rodrigues is also responsible to Endo for causing her damages;
3.    as between UPW and Rodrigues, the obligation ought to be discharged by Rodrigues.

The last requirement means that UPW's fault must have been "passive" while Rodrigues' fault must have been "active" or "primary".

*Saranillo v. Silva*, 78 Hawai'i 1, 14, 889 P.2d 685, 698 (1995), *recon. denied*. ("An employer held liable under *respondeat superior* is entitled to indemnification from its employee.") (citing *Ah Sing v. McIntyre*, 7 Haw. 196, 198 (1887)); *Genesis Indemnity Co. v. Deschutes County*, 95 P.3d 748, 750 (Or. App. 2004) ("In an action for indemnification, the claimant must prove that: (1) he has discharged a legal obligation owed to a third party; (2) the defendant was also liable to the third party; and (3) as between the claimant and the defendant, the obligation ought to be discharged by the latter.  The last requirement means that, although the claimant must have been legally liable to the injured third party, his liability must have been 'secondary' or his fault merely 'passive' while that of the defendant must have been 'active' or 'primary.'"); *In re All Asbestos Cases*, 603 F. Supp. 599, 607- 08 (D. Haw. 1984) ("The availability of indemnification under Hawaii law, as well as

25

under federal law, depends on the underlying tort indemnity principles of active and passive fault"); *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775 (Ky. 2000) (permitting clinic to seek indemnification from male employee that sexually harassed female employee who brought claim against hospital under state law anti-discrimination statute, regardless of the fact that the female employee could not have sued the clinic directly).

## CONTRACTUAL INDEMNIFICATION
## (RODRIGUES V. UPW)

Rodrigues claims that UPW entered into an oral contract whereby UPW promised to indemnify him, that is compensate Rodrigues monetarily, for attorney's fees he incurs in this lawsuit.

It is for you to determine (1) whether such a contract exists and (2) whether the contract requires UPW to indemnify Rodrigues.

In order for Rodrigues to obtain reimbursement from UPW, the contract must express the parties' intentions in clear and definite language. General language is not sufficient; rather, the parties must express this intent in clear and unequivocal language for the contract to be enforceable.

Pennsylvania Suggested Standard Civil Jury Instructions (Second Edition) Vol. I § 4.22 ("Indemnity Under Contract") (2003).

27

## ORAL CONTRACT

Except in certain situations, an oral contract is just as effective as if the agreement had been reduced to writing. If you find that all the items needed to form a contract are present, you must find that Rodrigues has established that both parties intended to be bound by the terms of the agreement, which were sufficiently definite to be specifically enforce, and there was mutuality of consideration. The burden of proving the oral contract is on Rodrigues, and Rodrigues must prove that the contract was clear and concise. You are to consider the conduct of the parties and the surrounding circumstances as to the formation of the contract, and whether the parties' conduct would be reasonable in light of the alleged contract and the surrounding circumstances. If you find that an oral contract existed in this case, it is irrelevant that the party seeking to enforce the contract did not take steps to obtain a written contract, despite his or her apparent ability and opportunity to do so.


Pennsylvania Suggested Standard Civil Jury Instructions (Second Edition) Vol. II § 15.02 ("Oral Contracts – Validity Generally") (2003); Carson v. Saito, 53 Haw. 178, 180, 489 P.2d 636, 637 (1971) ("You are instructed that a contract is an agreement between two or more persons by which each promises to do a particular thing. A contract need not be in writing. An oral contract is enforceable. In determining whether or not there was a contract between plaintiff and defendant, you should take into consideration all of the circumstances of the case. You should consider the subject matter, the conduct of the parties, the discussions, if any, had between them, and the statements you believe were made by them.").

28

## INDEMNITY CONTRACTS STRICTLY CONSTRUED

Contracts of indemnity are to be strictly construed.


      *Keawe v. Hawaiian Elec. Co., Inc.*, 65 Haw. 232, 237, 649 P.2d 1149, 1153 (1982) ("'contracts of indemnity are (to be) strictly construed, particularly where the indemnitee claims that it should be held safe from its own negligence) (internal brackets in original) (quoting *Kamali v. Hawaiian Elec. Co.*, 54 Haw. 153, 161, 504 P.2d 861, 866 (1972)).

29

## CONTRACT – GENERAL DEFINITION/ELEMENTS

A contract is an agreement between two or more persons which creates an obligation to do or not do something. A contract may be written or oral.

A contract requires proof of all of the following elements:

(1)   Persons with the capacity and authority to enter into the contract; and

(2)   An offer; and

(3)   An acceptance of that offer producing a mutual agreement, or a meeting of the minds, between the persons as to all of the essential terms of the agreement at the time the offer was accepted; and

(4)   Consideration.

In this case, <u>all elements</u> are in dispute.

Hawaii Civil Model Jury Instructions, Instruction No. 15.1 (1999 ed.).

## CONTRACT – AUTHORITY

Authority means having the permission or right to enter into a contract.

Hawaii Civil Model Jury Instructions, Instruction No. 15.3 (1999 ed.).

## CONTRACT – OFFER

An offer is an expression of willingness to enter into a contract which is made with the understanding that the acceptance of the offer is sought from the person to whom the offer is made.

An offer must be sufficiently definite, or must call for such definite terms in the acceptance, that the consideration promised is reasonably clear.

Hawaii Civil Model Jury Instructions, Instruction No. 15.4 (1999 ed.).

## CONTRACT – ACCEPTANCE

An acceptance is an expression of agreement to the essential terms of an offer, in the manner which may be invited or required by the offer. All of the essential elements of the offer must be accepted without change or condition.

A change in any essential term set forth in the offer or an attempt to condition acceptance is a rejection of the offer. It is a counteroffer which may be accepted, rejected totally, or rejected by a further counteroffer.

Hawaii Civil Model Jury Instructions, Instruction No. 15.5 (1999 ed.).

## CONTRACT – ESSENTIAL TERMS

The essential terms of an agreement are those terms which are basic, necessary and important to the agreement between the parties. In most contracts, the essential terms of an agreement are:

1. a description of the property, goods or services to be received;
2. the amount of money or other consideration to be given; and
3. the manner and time in which the property, goods or services are to be received and the money or other consideration is to be given.

It is for you to decide whether there are any other essential terms under the circumstances of this case.

Hawaii Civil Model Jury Instructions, Instruction No. 15.6 (1999 ed.).

34