ORIGINAL

CLAYTON C. IKEI
Attorney at Law
A Law Corporation

CLAYTON C. IKEI      1260
JERRY P.S. CHANG     6671
1440 Kapiolani Boulevard, Suite 1203
Honolulu, Hawaii 96814
Telephone: (808) 533-3777
Facsimile: (808) 521-7245
Email: CCIOffice@hawaii.rr.com

Attorneys for Plaintiff
JEANNE K. ENDO

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

APR 29 2008

at _____ o'clock and 49 min. ___ M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JEANNE K. ENDO, | ) CIVIL NO. 03-00563 LEK |
| Plaintiff, | ) PLAINTIFF'S TRIAL BRIEF; <br> ) CERTIFICATE OF SERVICE |
| v. | ) |
| UNITED PUBLIC WORKERS, AFSCME <br> LOCAL 646, AFL-CIO, | ) |
| Defendant. | ) |
| UNITED PUBLIC WORKERS, <br> AFSCME LOCAL 646, AFL-CIO, | ) |
| Third-Party Plaintiff, | ) |
| v. | ) |
| GARY W. RODRIGUES, | ) |
| Third-Party Defendant. | ) |
| | TRIAL DATE: May 13, 2008 |

5031

**PLAINTIFF'S TRIAL BRIEF**

Plaintiff Jeanne K. Endo, by and through her counsel, hereby submits her Trial Brief.

I.    **BRIEF STATEMENT OF THE CASE**

Beginning on April 20, 1993, Plaintiff was employed as an accountant for Defendant United Public Workers, AFSCME Local 646, AFL-CIO, ("UPW").  During Plaintiff's employment, Third-party Defendant Gary W. Rodrigues ("Rodrigues") was the State Director for the UPW.

Plaintiff alleges that throughout the time she worked under Rodrigues, she was subjected to hostile work environment sexual harassment.  Plaintiff alleges that due to Rodrigues' unchecked power within UPW, women who refused Rodrigues' requests for sexual favors were retaliated against, and women who submitted were rewarded with favorable treatment.  Moreover, Plaintiff alleges that Rodrigues pressured her for sexual favors, including intercourse, as well as touching her breasts and buttocks.

Plaintiff further alleges that Rodrigues retaliated against her by disciplining her at work because she refused to continue in a sexual relationship with him.

On April 5, 2002, Plaintiff filed her first sexual harassment and reprisal complaint simultaneously with the Hawaii Civil Rights Commission ("HCRC") and Equal Employment Opportunity Commission ("EEOC").  Plaintiff filed her second complaint with the HCRC and EEOC on April 24, 2003, alleging additional acts of reprisal by Rodrigues that occurred after the filing of the first HCRC/EEOC complaint.

As a result, Plaintiff filed this action against UPW alleging unlawful sex discrimination and harassment, as well as unlawful reprisal in violation of Hawaii Revised Statutes Chapter 378 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq.

On May 11, 2005, UPW filed its Motion for Summary Judgment (MSJ). Rodrigues filed a joinder to UPW's MSJ on May 16, 2005. On July 18, 2005, the Court filed its Order Granting in Part and Denying in Part, UPW's MSJ. In summary, the Court held that Plaintiff's claims against UPW alleging unlawful sex discrimination and harassment, as well as unlawful reprisal in violation of Title VII, may proceed to trial.

## II.  PLAINTIFF'S CLAIMS

### A.  Hostile Work Environment under Title VII

As to establish a prima facie case of hostile work environment harassment under Title VII, plaintiff shows that: (1) she was subjected to verbal or physical conduct because of her gender, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive working environment. See, Manatt v. Bank of America, NA, 339 F.3d 792, 798 (9th Cir. 2003) (quoting Kang v. U. Lim Am., Inc., 296 F.3d 810, 817 (9th Cir. 2002). Title VII is not a general civility code. Id. (citing, Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118

3

S.Ct. 2275, 141 L.Ed. 2d 662 (1998)). Simple teasing, offhand
comments, and isolated incidents (unless extremely serious) will
not amount to discriminatory changes in the terms or conditions
of employment. Faragher, 524 U.S. at 788. Rather, a hostile
work environment claim involves a workplace atmosphere so
discriminatory and abusive that it unreasonably interferes with
the job performance of those harassed. Brooks v. City of San
Mateo, 229 F.3d 917, 923 (9th Cir. 2000). Therefore, a plaintiff
must present evidence that her "workplace [was] permeated with
discriminatory intimidation . . . that [was] sufficiently severe
or pervasive to alter the conditions of his employment and create
an abusive working environment." Harris v. Forklift Sys., Inc.,
510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed. 2d 295 (1993).
Further, "[t]he working environment must both subjectively and
objectively be perceived as abusive." Fuller v. City of Oakland,
47 F.3d 1522, 1527 (9th Cir. 1995) (citing, Harris, 510 U.S. at
21-22).

    The Supreme Court has warned that evidence of a hostile work
environment should not be viewed too narrowly. The objective
severity of harassment should be judged from the perspective of a
reasonable person in the plaintiff's position, considering all
the circumstances. Oncale v. Sundowner Offshore Servs., Inc.,
523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed. 2d 201 (1998). Such
circumstances may include the frequency of the discriminatory

conduct, its severity, whether it is physically threatening or
humiliating, or a mere offensive utterance, and whether it
unreasonably interferes with an employee's work performance.
Harris, 510 U.S. at 23.  The required showing of severity or
seriousness of the harassing conduct varies inversely with the
pervasiveness or frequency of the conduct.  Ellison v. Brady, 924
F.2d 872, 878 (9th Cir. 1991).

In general, an employer is vicariously liable for a hostile
environment created by a supervisor.  Faragher, 524 U.S. at 780.
However, when no "tangible employment action" has been taken, an
employer may raise "an affirmative defense to liability or
damages, subject to proof by a preponderance of the evidence."
Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765, 141 L.Ed.
2d 633, 118 S.Ct. 2257 (1998).  The affirmative defense has two
prongs: (1) "that the employer exercised reasonable care to
prevent and correct promptly any sexually harassing behavior";
and (2) "that the plaintiff unreasonably failed to take advantage
of any preventive or corrective opportunities provided by the
employer or to avoid harm otherwise."  Id.  Whether the employer
has a stated anti-harassment policy is relevant to the first
element of the defense.  Id.  And an employee's failure to use a
complaint procedure provided by the employer "will normally
suffice to satisfy the employer's burden under the second element
of the defense."  Id.

A tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Ellerth, 524 U.S. at 761.

In Holly D. v. Cal. Inst. of Tech., 339 F.3d 1158 (9th Cir. 2003), stated:

> A tangible employment action need not cause economic harm to the employee -- the Ellerth list includes, for example, reassignment with significantly different responsibilities. It is true that in the more common tangible employment action cases, a supervisor demands sexual favors and, when refused, punishes his victim by an employment action that causes economic harm -- the employee is fired or demoted as a consequence of her refusal to have sex with her supervisor. The injury in such cases is clear. When, *however, the victim submits to her supervisor's demands and is hired, promoted, not fired, or not demoted because she has been successfully coerced into engaging in sexual acts with him, she is also directly injured by the employment action.* The injury in such cases -- the physical and emotional damage resulting from performance of unwanted sexual acts as a condition of employment -- is as tangible as an injury can be.

Id. at 1171 (emphasis added).

Thus, the Ninth Circuit in Holly D. stated if a supervisor undertakes or recommends a tangible job action based on a subordinate's response to unwelcome sexual demands, the employer is liable and cannot raise the affirmative defense. The result is the same whether the employee rejects the demands and is

6

subjected to an adverse tangible employment action, or submits to
the demands and consequently obtains a tangible job benefit. Id.
at 1172. Also, the employer would be automatically liable if the
supervisor granted the employee a tangible job benefit, such as
the retention of her employment, based on her submission to his
sexual demands. Id. at 1172 (citations omitted).

Here, Plaintiff alleges that she was subjected to unwelcome
sexual conduct from Rodrigues beginning in 1994 and it continued
up to the point where she filed her complaint and afterward.
After Plaintiff filed her complaint, Rodrigues subjected her to
reprisal by disciplining her. Even before she filed her
complaint of sexual harassment, Rodrigues would, as a result of
Plaintiff's refusal to continue to engage in a sexual
relationship with him, find fault with her work and seek to
retaliate against her for rebuffing his sexual advances.

Rodrigues created a hostile work environment constantly from
1994, until he was finally removed from his position with the
union.

Plaintiff alleges that in 1994, Rodrigues started suggesting
that Plaintiff should have sex with him. Plaintiff ignored his
advances. Subsequently, she started receiving reprimands about
the quality of her work. He stated several times that she would
be disciplined and told her she could face termination if her
work did not improve.

In January 1997, Rodrigues told Plaintiff he wanted to "get together" with her, indicating his desire for a sexual relationship. Rodrigues increased the pressure on Plaintiff until the end of 1997. He continued finding fault with Plaintiff's work. In mid-December of that year, he stated his desires clearly, telling her that he wanted to have sex with her. Plaintiff ignored his advances during December 1997 and early January 1998. She attempted to rebuff him without offending him because she feared for her job.

Finally, in January 1998, she stated that she ran out of excuses for Rodrigues and finally agreed to have sex with him. Once Plaintiff agreed to have sex with him, Rodrigues promised her that she would be in charge of the business office — a job which ostensibly was already hers, but which in reality was held by Rodrigues himself.

After their January 1998 sexual encounter, Plaintiff found that she was not under such close scrutiny. She found that Rodrigues was more willing to talk to her about errors in reports and how to correct them.

Rodrigues increased his scrutiny later and began to find fault again with Plaintiff's job performance. Finally in 2000, Plaintiff again agreed to have sex with him; this time in the UPW offices. Thereafter, Rodrigues continued his pressure for additional sexual encounters with Plaintiff. He would remind her

8

of their encounter in 2000 and ask her to do it again.  Plaintiff claims that during this period, he would touch her breasts while making the demands and she would touch his genitals since that seemed to satisfy him and it prevented her from having to sleep with him again.

Over time, the pattern became clear to Plaintiff:  Rodrigues manipulated her into being receptive to his sexual advances.  If she cooperated, her job became easier; if she resisted, her job became more difficult.

Plaintiff finally filed her first sexual harassment and reprisal complaint simultaneously with the HCRC and EEOC on April 5, 2002.

Once she did that, Rodrigues increased his retaliation.  He immediately instructed a UPW employee to write an article for the Union newspaper criticizing Plaintiff's work.  He found more fault with her work.  Through his assistant and his secretary (now his wife), he badgered Plaintiff for information and threatened her employment if she did not provide it.  He questioned interactions she had with other staff.

On April 24, 2003, Plaintiff filed her second complaint with the HCRC and EEOC, alleging she has been subjected to reprisal by Rodrigues due to her filing of her first HCRC/EEOC complaint. The second complaint alleges that Rodrigues publicly ridiculed her to members of UPW Executive Committee, State Executive Board,

delegates, general membership and staff, and revealed details of her first HCRC/EEOC complaint to them.

Additionally, Plaintiff alleged that Rodrigues began more closely scrutinizing her work and refused to follow established union procedures in investigating the claims in her complaint. Plaintiff also cited Rodrigues' plan to terminate her and his instruction to a UPW employee to write a disparaging article about Plaintiff in the UPW newspaper.

Rodrigues clearly engaged in a pattern that Plaintiff clearly identified: He manipulated her so that she found herself in a position where she had to be receptive to his demands for sex or face termination. She worked in that environment continuously from 1994 until the time she filed her simultaneous complaints with HCRC and the EEOC.

B.    **Reprisal under Title VII**

In a reprisal claim under Title VII, a plaintiff establishes a prima facie case of reprisal by showing: (1) she engaged in protected activity; (2) she was subjected to an adverse employment action; and (3) a causal link between the protected activity and adverse employment action. See, Ray v. Henderson, 217 F.3d 1234, 1241 (9th Cir. 2000). If a plaintiff has asserted a prima facie retaliation claim, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision. Ray, 217 F.3d at 1240. If the defendant

10

articulates such a reason, the plaintiff bears the ultimate
burden of demonstrating that the reason was merely a pretext for
a discriminatory motive.  Id.

Additionally, in Porter v. California Dept. of Corrections,
383 F.3d 1018 (9th Cir. 2004), the Ninth Circuit stated that
causality is not dependant, as a matter of law, on temporal
proximity.  Although a lack of temporal proximity may make it
more difficult to show causation, "circumstantial evidence of a
'pattern of antagonism' following the protected conduct can also
give rise to the inference."  Porter, 383 F.3d at 1029.  It
stated:

> It is important to emphasize that it is
> causation, not temporal proximity itself,
> that is an element of plaintiff's prima facie
> case, and temporal proximity merely provides
> an evidentiary basis from which an inference
> can be drawn.  The element of causation,
> which necessarily involves an inquiry into
> the motives of an employer, is highly
> context-specific.  When there may be valid
> reasons why the adverse employment action was
> not taken immediately, the absence of
> immediacy between the cause and effect does
> not disprove causation.

Id. at 1030 (quoting, Kachmar v. SunGard Data Sys., Inc., 109
F.3d 173, 178 (3rd Cir. 1997).

In Black v. City & County of Honolulu, 112 F.Supp. 2d 1041
(D. Haw. 2000), the court stated that refusal of sexual advances
is sufficient to constitute protected activity under Title VII.
Id. at 1049, citing, Fleming v. South Carolina Dept. of

11

Corrections, 952 F.Supp. 283 (D. S.C. 1996).  The Ninth Circuit
has stated that a wide array of disadvantageous changes in the
workplace constitute adverse employment actions, and thus has
taken a broad view of what may constitute an adverse employment
action.  Ray, 217 F.3d at 1240-1244; See also, EEOC Compliance
Manual § 8, Retaliation, ¶ 8008 (1998) ("Adverse employment
action" means "any adverse treatment that is based on a
retaliatory motive and is reasonably likely to deter the charging
party or others from engaging in protected activity.")  For
instance, the transfer of job duties or issuance of a sub-average
performance rating may constitute an adverse action.  Yartzoff v.
Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987).

    Here, as noted above, the first incident of retaliation was
almost immediate.  Rodrigues instructed a UPW employee to write
an article for the Union newspaper disparaging Plaintiff's job
performance.  Defendants argue that the article was never
published, but the instruction was given and the article was
written.  The intent to punish Plaintiff is clear.

    Furthermore, the frequency and severity of Rodrigues'
criticism of Plaintiff's work increased.  She was given
increasingly short deadlines to provide information to Rodrigues
or to Rodrigues' office — in one instance she tells Rodrigues'
secretary that she cannot provide a report to her within nine
minutes.  Plaintiff's vacation requests are disapproved or made

conditional upon her completing a set of tasks. Her reasons for emergency vacation are questioned. Plaintiff states that she has never seen a vacation request denied before.

The seriousness of the mistakes which Plaintiff was alleged to have made also changes. She is reprimanded in one instance for a typographical error although she was instructed by Rodrigues to use a particular spelling. She is additionally hounded to resolve a $24.00 error regarding flight coupons with Aloha Airlines.

Finally, Plaintiff finds herself being blamed for actions which Rodrigues himself took. She is accused of ignoring requests from the State of Hawaii Judiciary to make functional a new computer system to facilitate the transfer of data which the Judiciary was obligated to provide about employees who were UPW members. Rodrigues himself had instructed the Union's data process contractor that other projects had priority over that one, but still seeks to attach the blame to Plaintiff.

Plaintiff contends that Rodrigues intended to retaliate against her as a result of her filing her HCRC/EEOC complaint.

## III. RELIEF SOUGHT

As stated in her Complaint, Plaintiff seeks the following relief:

1.   Judgment be entered in her favor against UPW on all counts;

2.   Special damages to be proven at trial;

13

3.    General damages to be proven at trial;

4.    Punitive damages to be proven at trial;

5.    Backpay, front pay, prejudgment interests, lost
      employment benefits, reasonable attorneys' fees
      and costs,  equitable and injunctive relief, and
      other such relief as the Court deems appropriate.

DATED:  Honolulu, Hawaii, April 29, 2008.

                                    _____
                                    CLAYTON C. IKEI
                                    JERRY P.S. CHANG

                                    Attorneys for Plaintiff
                                    JEANNE K. ENDO

14

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JEANNE K. ENDO, | ) CIVIL NO. 03-00563 LEK |
| | ) |
| Plaintiff, | ) CERTIFICATE OF SERVICE |
| | ) |
| v. | ) |
| | ) |
| UNITED PUBLIC WORKERS, AFSCME | ) |
| LOCAL 646, AFL-CIO, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| UNITED PUBLIC WORKERS, | ) |
| AFSCME LOCAL 646, AFL-CIO, | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GARY W. RODRIGUES, | ) |
| | ) |
| Third-Party Defendant. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was duly served upon the following parties at their last known address via U.S. mail, postage prepaid, on April 29, 2008:

                    TO:  ERIC A. SEITZ, ESQ.
                         LAWRENCE I. KAWASAKI, ESQ.
                         820 Mililani Street, Suite 714
                         Honolulu, Hawaii 96813

                         Attorneys for Third-Party
                         Defendant Gary W. Rodrigues

AND

JAMES E.T. KOSHIBA, ESQ.
CHARLES A. PRICE, ESQ.
KOSHIBA AGENA & KUBOTA
2600 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813

Attorneys for Defendant
UPW, AFSCME, LOCAL 646, AFL-CIO

DATED:  Honolulu, Hawaii, April 29, 2008.

CLAYTON C. IKEI
JERRY P.S. CHANG

Attorneys for Plaintiff
JEANNE K. ENDO

2