ORIGINAL

CLAYTON C. IKEI
Attorney at Law
A Law Corporation

CLAYTON C. IKEI          1260
JERRY P.S. CHANG         6671
1440 Kapiolani Boulevard, Suite 1203
Honolulu, Hawaii 96814
Telephone: (808) 533-3777
Facsimile: (808) 521-7245
Email: CCIOffice@hawaii.rr.com

Attorneys for Plaintiff
JEANNE K. ENDO

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 06 2008

at 1 o'clock and 30 min P M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JEANNE K. ENDO,<br><br>                    Plaintiff,<br><br>          v.<br><br>UNITED PUBLIC WORKERS, AFSCME<br>LOCAL 646, AFL-CIO,<br><br>                    Defendant.<br>UNITED PUBLIC WORKERS,<br>AFSCME LOCAL 646, AFL-CIO,<br><br>     Third-Party Plaintiff,<br><br>          v.<br><br>GARY W. RODRIGUES,<br><br>     Third-Party Defendant. | ) CIVIL NO. 03-00563 LEK<br>)<br>) PLAINTIFF'S OBJECTION TO<br>) DEFENDANT UNITED PUBLIC<br>) WORKERS' PROPOSED JURY<br>) INSTRUCTIONS, FILED APRIL 29,<br>) 2008; CERTIFICATE OF SERVICE<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) TRIAL DATE: May 13, 2008 |

**PLAINTIFF'S OBJECTION TO DEFENDANT UNITED PUBLIC WORKERS'
PROPOSED JURY INSTRUCTIONS, FILED APRIL 29, 2008**

Plaintiff Jeanne Endo ("Plaintiff"), by and through her

counsel, hereby submits her Objection to Defendant United Public

Workers' ("UPW") Proposed Jury Instructions, Filed April 29, 2008.

Plaintiff notes that the UPW did not serve upon her its proposed supplemental jury instructions per Local Rule 51.1.

Where appropriate, Plaintiff will incorporate by references the Parties' Proposed Joint Jury Instructions ("Joint Instruction"), or her Proposed Supplemental Jury Instructions ("Plaintiff's Instruction").

Also, with respect to UPW's proposed instructions that pertains to its claims against Third-party Defendant Gary W. Rodrigues (pages 27-24), Plaintiff takes no position.

DATED:  Honolulu, Hawaii, May 6, 2008.

_____
CLAYTON C. IKEI
JERRY P.S. CHANG

Attorneys for Plaintiff
JEANNE K. ENDO

2

## HOSTILE WORK ENVIRONMENT CAUSED BY
## NON-IMMEDIATE SUPERVISOR OR
## BY CO-WORKER – CLAIM BASED ON NEGLIGENCE

The plaintiff seeks damages from the defendant for a hostile work environment caused by <u>sexual</u> harassment. The plaintiff has the burden of proving both of the following element by a preponderance of the evidence:

    1.    the plaintiff was subjected to a sexually hostile work environment by a <u>non-immediate supervisor</u>; and

    2.    the defendant or a member of the defendant's management knew or should have known of the harassment and failed to take prompt, effective remedial action reasonably calculated to end the harassment.

A person is a member of management if the person has substantial authority and discretion to make decisions concerning the terms of the harasser's employment or the plaintiff's employment, such as authority to counsel, investigate, suspend, or fire the accused harasser, or to change the conditions of the plaintiff's employment. A person who lacks such authority is nevertheless part of management if he or she has an official or strong duty in fact to communicate to management complaints about work conditions. You should consider all the circumstances in this case in determining whether a person has such a duty.

    The defendant's remedial action must be reasonable and adequate. Whether the defendant's remedial action is reasonable and adequate depends upon the remedy's effectiveness in stopping the individual harasser from continuing to engage in such conduct and in discouraging other potential harassers from engaging in similar unlawful conduct. An effective remedy should be

3

proportionate to the seriousness of the
offense.

     If you find that the plaintiff has
proved both of the elements on which the
plaintiff has the burden of proof, your
verdict should be for the plaintiff.  If, on
the other hand, the plaintiff has failed to
prove either of these elements, your verdict
should be for the defendant.

Ninth Circuit Model Civil Jury Instructions
10.2C (2007) (with underlined insertions).

Plaintiff objects to the entire instruction as inapplicable
as Rodrigues was Plaintiff's supervisor and not coworker.  Also,
Parties' Proposed Joint Instruction No. 23, correctly pertains to
hostile work environment caused by supervisor.

## "TANGIBLE EMPLOYMENT ACTION" DEFINED

Tangible employment actions are the means by which a supervisor brings the official power of the enterprise to bear on subordinates. A tangible employment action requires an official act of the enterprise, a company act. A tangible employment action consists of a significant change in employment status such as [firing] [failing to promote] [reassignment] [a significant change in responsibilities] [undesirable reassignment] or [a significant change in benefits]. [A tangible employment action occurs when a superior obtains sexual favors from an employee by conditioning continued employment on participation in unwelcome acts.]

Ninth Circuit Model Civil Jury Instructions 10.4B (2007).

Although Plaintiff also cites the Ninth Circuit Model Instruction 10.4B, her version identified the tangible employment actions at issue here. (See, Plaintiff's Supplemental Instruction No. 3). Also, Plaintiff added a paragraph stating a tangible employment action may also occur when the harassing supervisor bestows benefits in exchange for an employee's acquiescence. Id.

5

**"REASONABLE CARE" – DEFINED**

Proof of the following facts will suffice to establish the exercise of reasonable care by UPW, the employer:

· UPW had promulgated an explicit policy against sexual harassment in the workplace;

· That policy was fully communicated to its employees; and

· That policy provided a reasonable avenue for Endo to make a complaint to higher management

On the other hand, proof that Endo did not follow a complaint procedure provided by UPW, employer, will ordinarily be enough to establish that Endo "unreasonably failed" to take advantage of a corrective opportunity.

Federal Jury Practice and Instructions (5th Ed. 2001) § 171.41 (Discrimination in Employment – Reasonable Care) (citing, Burlington Industries, Inc. v. Ellerth, A tangible employment action may also occur when the harassing supervisor bestows benefits in exchange for an employee's acquiescence., 762 (1998); Faragher v. City of Boca Raton, 524, U.S. 775, 807 (1998).

Plaintiff objects to this instruction as argumentative. Moreover, Plaintiff contends that Parties' Proposed Joint Instruction No. 23, correctly instructs the jury on the allocation of burden of proof and when it may consider the employer's affirmative defense.

Also, no affirmative defense is available when the supervisor's harassment culminates in a tangible employment

6

action, such as discharge, demotion, or undesirable reassignment. Faragher v. City of Boca Raton, 524 U.S. 775, 808-809, 118 S.Ct. 2275, 141 L.Ed. 2d 662 (1998); see also, Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 517 (9th Cir. 2000)(It is well established that it is insufficient for an employer simply to have in place anti-harassment policies; it must also implement them.)

## BLUE COLLAR ENVIRONMENT

You must evaluate Endo's claim of sexual
harassment in the context of a blue collar
environment where crude language is commonly
used by male and female employees.

Gross v. Burggraf Construction Co., 53
F.3d 1531, 1539 (10th Cir. 1995)
("Accordingly, we must evaluate Gross' claim
of gender discrimination in the context of a
blue collar environment where crude language
is commonly used by male and female
employees. Speech that might be offensive or
unacceptable in a prep school faculty
meeting, or on the floor of Congress, is
tolerated in other work environments. We
agree with the following comments by the
district court in Rabidue v. Osceola Refining
Co., 584 F. Supp. 419, [430] (E.D. Mich.
1984), aff'd 805 F.2d 611 (6th Cir. 1986),
cert. denied, 481 U.S. 1041, 107 S.Ct. 1983,
95 L.Ed. 2d 823 (1987): [T]he standard for
determining sex[ual] harassment would be
different depending upon the work
environment. Indeed, it cannot seriously be
disputed that in some work environments,
humor and language are rough hewn and vulgar.
Sexual jokes, sexual conversations and girlie
magazines may abound. Title VII was not
meant to—or can—change this. It must never
be forgotten that Title VII is the federal
court mainstay in the struggle for equal
employment opportunity for the female workers
of America. But it is quite different to
claim that Title VII was designed to bring
about a magical transformation in the social
mores of American workers.)

Plaintiff objects to this instruction as argumentative, and

attempts to misconstrue the Plaintiff's work setting. Moreover,

courts have criticized the Gross decision as contrary to the

purposes of Title VII. In Williams v. GMC, 187 F.3d 553 (6th

8

Cir. 1999), in rejecting Gross' reasoning, the court in Williams

stated:

> We do not believe that a woman who chooses
> to work in the male-dominated trades
> relinquishes her right to be free from sexual
> harassment; indeed, we find this reasoning to
> be illogical, because it means that the more
> hostile the environment, and the more
> prevalent the sexism, the more difficult it
> is for a Title VII plaintiff to prove that
> sex-based conduct is sufficiently severe or
> pervasive to constitute a hostile work
> environment. Surely women working in the
> trades do not deserve less protection from
> the law than women working in a courthouse.

Id. at 564; see also, O'Rourke v. City of Providence, 235 F.3d

713, 735 (1st Cir. 2001)(Rejecting Gross, citing O'Rourke, and

noting that regardless of the setting, the critical issue, Title

VII's text indicates, is whether members of one sex are exposed

to disadvantageous terms or conditions of employment to which

members of the other sex are not exposed).

**RETALIATION—ELEMENTS AND BURDEN OF PROOF**

The plaintiff seeks damages against the defendant for retaliation.  The plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1.   the plaintiff engaged in or was engaging in an activity protected under federal law, that is [*activity*];

2.   the employer subjected the plaintiff to an adverse employment action, that is [*adverse employment action*]; and

3.   the plaintiff was subjected to the adverse employment action because of her [*participation in protected activity*.]

If you find that the plaintiff has proved all three of these elements, your verdict should be for the plaintiff.  If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict should be for the defendant.]

*or*

3.   the protected activity was a motivating factor in the adverse employment action.

If you find that the plaintiff has failed to prove any of these elements, your verdict should be for the defendant.  If the plaintiff has proved all three of these elements, the plaintiff is entitled to your verdict, unless the defendant has proved by a preponderance of the evidence that it would have made the same decision even if the plaintiff's participation in a protected activity had played no role in the employment decision.  In that event, the defendant is entitled to your verdict, even if the plaintiff has met her burden of proof on all three of the above elements.]

Ninth Circuit Model Civil Jury Instructions 10.3 (2007) (with underlined insertions).

10

Although Plaintiff also cites to this Ninth Circuit Instruction No. 10.3, Plaintiff contends her Proposed Supplemental Instruction No. 5, accurately describes the protected activities and adverse actions alleged in this matter.

## "PROTECTED ACTIVITY" – DEFINED

Protected activity may be an informal or formal complaint made, or other opposition engaged in, by the Plaintiff, in response to an act of sexual harassment by the employer or the employer's agent.

However, not every complaint about an employer's action constitutes a protected activity; retaliation in response to an activity that is not protected does not support a retaliation claim. In order to be protected activity, Endo's opposition must have been directed toward sexual harassment by UPW. Opposition to sexual harassment by a co-employee cannot be the basis of a retaliation claim. Only reasonable opposition to an employer's actions are protected by Title VII; unreasonable, bad faith or malicious complaints are not protected.

Commentary to Ninth Circuit Model Civil Jury Instructions (Approved 8/2004), 12.3A (citing Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493, 506 (9th Cir. 2002) (stating that informal as well as formal complaints or demands are protected activity under Title VII); Silver v. KCA, Inc., 586 F.2d 138, 140-4 (9th Cir. 1978) (determining that employee's opposition to a racially discriminatory act of a co-employee cannot be the basis for a retaliation action); Wrighten v. Metropolitan Hosps., Inc., 726 F.2d 1346, 1354-56 (9th Cir. 1984) (stating that only reasonable opposition to the employment practice is protected by Title VII); Funai v. Brownlee, 369 F.Supp. 2d 1222, 1243 (D. Haw. 2004) ("In order to be protected activity, the Plaintiff's opposition must have been directed toward a discriminatory act by the Defendant employer. Opposition to a discriminatory act of a co-employee cannot be the basis of a retaliation action. Only reasonable opposition to the employment practice is protected by Title

VII; unreasonable, bad faith or malicious
complaints are not protected.")

Plaintiff objects to the second paragraph of this
instruction as argumentative.  Moreover, the second paragraph
cites to "opposition to harassment by a *co-employee* cannot be the
basis of a retaliation claim," misconstrues the allegations in
this case, as Rodrigues was Plaintiff's supervisor.

## LACHES

UPW raises the affirmative defense of laches; that is UPW contends that Endo waited too long in bringing suit and the UPW was unfairly prejudiced as a result of the delay. Laches is a defense that is similar to a statute of limitations, and prevents a plaintiff from presenting old claims that they have not pursued for many years.

To prove laches, UPW must establish by a preponderance of the evidence that:

1.   Endo had knowledge of her right to file a sexual harassment claim;

2.   Endo inexcusably or unreasonably delayed in filing the present lawsuit, and

3.   UPW has been prejudiced by a belated assertion of her rights.

In presenting its defense, UPW is entitled to a presumption of laches if Endo delayed filing suit more than two years.  The two-year time period for the presumption of laches is based on Hawaii's statute of limitations for sexual harassment claims. The presumption of laches means that it is presumed that the delay was unreasonable, and that UPW was prejudiced by the delay.

If Endo delayed for more than two years between the time of the incidences giving rise to her sexual harassment and the filing of the present lawsuit on October 17, 2003, it creates a presumption in UPW's favor, and Endo has the burden of presenting evidence that she had a reasonable excuse for the delay.

If Endo can show she had a reasonable excuse, then you have to consider the case in its entirety to determine if there was laches. If Endo does not show a reasonable excuse, then the presumption of laches can be

14

applied and you may find in favor of UPW on all or some of her claims.

If you decide that Endo has provided evidence that her delay in bringing the current lawsuit is justified, you will then consider the case in its entirety to decide whether laches should be applied because UPW has been unfairly prejudiced by Endo's delay.

In determining whether Endo's delay was unreasonable, you should consider the length of delay.

A defendant is prejudiced by a delay when the assertion of a claim available some time ago would cause defendant difficulty. Specifically in this case, UPW was unfairly prejudiced if Endo's delay caused it difficulty to defend itself in this lawsuit that would not have existed if Endo had not delayed.  If you find that UPW was unfairly prejudiced by Endo's unreasonable delay, then you must apply the defense of laches.

Bratton v. Bethelehem Steel Corp., 649 F.2d 658, 666 (9th Cir. 1980)("The defense of laches ' requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.') (quoting Costello v. U.S., 365 U.S. 265, 282 (1961) ("We have held that laches may constitute a defense to a Title VII action . . . .")); City of Davis v. Coleman, 521 F.2d 661, 677 (9th Cir. 1975) ("An indispensable element of lack of diligence is knowledge, or reason to know, of the legal right, assertion of which is 'delayed.'"); Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 (9th Cir. 2002) (applying California's three-year statute of limitations for fraud claims for determining whether presumption of laches exist, where Lanham Act violations consisted of on-going claims both within, as well as outside the limitations periods) ("[I]f the claim is filed after the analogous limitations period has expired, the presumption is that laches

15

is a bar to suit.") ("The reasonableness of the plaintiff's delay is considered in light of the time allotted by the analogous limitations period."); <u>Shouse v. Pierce Co.</u>, 559 F.2d 1142, 1147 (9th Cir. 1977) ("Difficulties caused by the pendency of a lawsuit, and not by delay in bringing the suit do not constitute prejudice within the meaning of the laches doctrine."); Proposed Jury Instructions submitted in *The* <u>Mashantucket Pequot Tribe v. Redican</u>, Civil Action No. 3:02 CV 1828 (JCH) (D. Conn. 2005), 2005 WL 218485.

Plaintiff objects to the entire instruction as argumentative, and inapplicable as UPW previously challenged the timeliness of Plaintiff's EEOC/HCRC complaints when it filed it Motion for Summary Judgment ("MSJ").

Plaintiff notes that on July 18, 2005, the Court filed its Order Granting in Part and Denying in Part the UPW's MSJ where it held in part that:  Plaintiff's Title VII sexual harassment claims are not time barred by the 300 day limitation period in 42 U.S.C. §2000e-5(e)(1); Plaintiff's state-law sexual harassment claim are barred by the two-year statute of limitations under state law; and Plaintiff's retaliation claims are not time barred.  (<u>See</u>, Order at 10).

## PUNITIVE DAMAGES FOR TITLE VII CLAIM

Endo claims the acts of UPW were done with malice or reckless indifference to Endo's federally protected rights so as to entitle Endo to an award of punitive damages.

In some cases, punitive damages may be awarded for the purpose of punishing a defendant for its wrongful conduct and to deter others from engaging in similar wrongful conduct. However, so long as the employee who engaged in the sexually harassing conduct is not an alter ego of the employer, an employer may not be held liable for punitive damages because of discriminatory acts on the part of its managerial employees where those acts by such employees are contrary to the employer's own good faith efforts to comply with the law by implementing policies and programs designed to prevent such unlawful discrimination in the workplace.

If Endo has not proved that Rodrigues was an alter ego of UPW, then you must decide, an award of punitive damages would be appropriate in this case only if you find for Endo and then further find from a preponderance of evidence:

1.    That Rodrigues acted as a managerial employee within the scope of his employment; and

2.    That Rodrigues personally acted with malice or reckless indifference to Endo's federally protected rights; and

3.    That UPW itself had not acted in a good faith attempt to comply with the law by adopting policies and procedures designed to prohibit such discrimination in the workplace.

On the other hand, if Endo has proved that Rodrigues was an alter ego of UPW, then you must decide, an award of punitive damages would be appropriate in this case only if you

17

find for Endo and then further find from a preponderance of evidence:

1.    That Rodrigues acted as a managerial employee within the scope of his employment; and

2.    That Rodrigues personally acted with malice or reckless indifference to Endo's federally protected rights.
If you find that punitive damages should be assessed against UPW, you may consider the financial resources of UPW in fixing the amount of such damages.

Punitive damages must bear a reasonable relationship to Endo's actual injury. However, there is no simple way to link punitive to compensatory damages.  In determining a reasonable relationship to the actual injury, you must consider all relevant factors.   These include:

·    The impact and severity of UPW's conduct.
·    The amount of time UPW conducted itself in this manner.
·    The amount of compensatory damages.
·    The potential profits UPW may have made from UPW's conduct.
·    The attitudes and actions of UPW's top management after the misconduct was discovered.
·    The effect of the damage award on UPW's financial condition.

Federal Jury Practice and Instructions (5th Ed. 2001) § 171.94 (Discrimination in Employment – Punitive Damages); Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1197-98 (9th Cir.2002) ("In Kolstad, the Supreme Court resolved a circuit split over the appropriate standard for determining the availability of punitive damages under Title VII by establishing a three-part inquiry to address when the evidence supports a punitive damages verdict . . . Under Title VII, the jury may award punitive damages if the moving party

18

demonstrates that 'the respondent engaged in
a discriminatory practice or discriminatory
practices with malice or with reckless
indifference to the federally protected
rights of an aggrieved individual . . . The
Supreme Court also held that the plaintiff
must 'impute liability for punitive damages
to respondent.'  Under this step, the
plaintiff must show that the intentional
discrimination by an employee is attributable
to the employer by using traditional agency
principles, e.g., that a managerial employee
acted within the scope of his or her
employment . . . Finally, the Supreme Court
clarified that the defendant employer may
raise as an affirmative defense its good
faith efforts to comply with Title VII, if
such efforts were contrary to the actions of
its managerial agents.") (citations omitted);
Passantino v. Johnson & Johnson Consumer
Products, Inc., 212 F.3d 493, 516 (9th Cir.
2000) ("Thus, the Burlington defense remains
inapplicable as a defense to punitive damages
when the corporate officers who engage in
illegal conduct are sufficiently senior to be
considered proxies of the company.").

Plaintiff objects to the entire instruction as it is
argumentative in how the jury should determine whether punitive
damage is warranted.  In Kolstad v. ADA, 527 U.S. 526, 119 S.Ct.
2118, 144 L.Ed. 2d 494 (1999), the Supreme Court established a
three-part inquiry for determining the availability of punitive
damages under Title VII.  First, the jury may award punitive
damages if the moving party demonstrates that "the respondent
engaged in a discriminatory practice or discriminatory practices
with malice or with reckless indifference to the federally
protected rights of an aggrieved individual.  Id. 535.  Questions
of malice and reckless indifference are subjective questions

19

concerning the employer's motive or intent, rather than an objective inquiry into whether the employer's behavior is "egregious."  Although egregious conduct could be evidence of an intentional violation of the law, it was not a necessary element. A defendant is appropriately subject to punitive damages if it acts "in the face of a perceived risk that its actions will violate federal law."  Id. at 535-536.

Second, the plaintiff must "impute liability for punitive damages to [defendant]".  Id. at 539.  Under this step, the plaintiff must show that the intentional discrimination by an employee is attributable to the employer by using traditional agency principles, i.e., that a managerial employee acted within the scope of his or her employment.  Id. at 540-41.

Third, the defendant employer may raise as an affirmative defense its good faith efforts to comply with Title VII, if such efforts were contrary to the actions of its managerial agents. Id. at 545-46; see also, Passantino, 212 F.3d at 516-517 (The affirmative defense is thus unavailable to the employer for the actions of agents sufficiently senior to be considered proxies.)

Plaintiff contends that her Proposed Supplemental Jury Instruction No. 7 appropriately instructs the jury in determining punitive damage.

20

**"MANAGERIAL EMPLOYEE" - DEFINED**

In determining whether an employee is a "managerial employee," you should look at the type of authority that the employer has given to the employee, the amount of discretion that the employee has in what is done and how it is accomplished.  An employee must be important but need not be the employer's top management, officer, or director to be acting as a managerial employee.

Kolstad v. American Dental Association, 527 U.S. 526, 543 - 544 (1999) ("'Unfortunately, no good definition of what constitutes a "managerial capacity" has been found,' and determining whether an employee meets this description requires a fact-intensive inquiry.  'In making this determination, the court should review the type of authority that the employer has given to the employee, the amount of discretion that the employee has in what is done and how it is accomplished.'  Suffice it to say here that the examples provided in the Restatement of Torts suggest that an employee must be 'important,' but perhaps need not be the employer's 'top management, officers, or directors,' to be acting 'in a managerial capacity.'") (citations omitted).

Plaintiff objects to this instruction as unnecessary and likely to confuse the jury as it should be undisputed that Rodrigues was Plaintiff's supervisor during the relevant time period.

21

## PUNITIVE DAMAGES FOR STATE LAW CLAIM

Endo claims UPW acted intentionally, wilfully, wantonly, oppressively, maliciously, or with gross negligence, with respect to Endo's rights protected by state law so as to entitle Endo to an award of punitive damages.

In some cases punitive damages may be awarded for the purpose of punishing a defendant for its wrongful conduct and to deter others from engaging in similar wrongful conduct. However, so long as the employee who engaged in the sexually harassing conduct is not an alter ego of the employer, an employer may not be held liable for punitive damages because of discriminatory acts on the part of its managerial employees where those acts by such employees are contrary to the employer's own good faith efforts to comply with the law by implementing policies and programs designed to prevent such unlawful discrimination in the workplace.

If Endo has not proved that Rodrigues was an alter ego of UPW, then you must decide, an award of punitive damages would be appropriate in this case only if you find for Endo and then further find from a preponderance of evidence:

1.    That Rodrigues acted as a managerial employee within the scope of his employment; and

2.    That UPW itself had not acted in a good faith attempt to comply with the law by adopting policies and procedures designed to prohibit such discrimination in the workplace.

and from clear and convincing evidence:

3.    That Rodrigues personally acted intentionally, wilfully, wantonly, oppressively or with gross negligence.

22

On the other hand, if Endo has proved that Rodrigues was an alter ego of UPW, then you must decide, an award of punitive damages would be appropriate in this case only if you find for Endo and then further find from a preponderance of evidence:

1.    That Rodrigues acted as a managerial employee within the scope of his employment; and from clear and convincing evidence:

2.    That Rodrigues personally acted intentionally, wilfully, wantonly, oppressively or with gross negligence.

The proper measure of punitive damages under state law is (1) the degree of intentional, wilful, wanton, oppressive, malicious or grossly negligent conduct that formed the basis for your prior award of damages against that defendant and (2) the amount of money required to punish that defendant considering his/her/its financial condition.  In determining the degree of a particular defendant's conduct, you must analyze that defendant's state of mind at the time he/she/it committed the conduct which formed the basis for your prior award of damages against that defendant.  Any punitive damages awarded must be reasonable.

Federal Jury Practice and Instructions (5th Ed. 2001) § 171.94 ("Punitive Damages"); Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493, 516 (9th Cir. 2000) ("Thus, the Burlington defense remains inapplicable as a defense to punitive damages when the corporate officers who engage in illegal conduct are sufficiently senior to be considered proxies of the company."); Hawaii Civil Jury Instruction (1999 edition) No. 8.12.

Plaintiff objects to the entire instruction for the same

reasons she objects to UPW's Proposed Instruction on Punitive

23

Damages on the Title VII claims.   Moreover, this instruction is argumentative, redundant and will likely confuse the jury. Plaintiff again contends that her Proposed Supplemental Instruction No. 7 should be used.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JEANNE K. ENDO, | ) CIVIL NO. 03-00563 LEK |
| | ) |
| Plaintiff, | ) CERTIFICATE OF SERVICE |
| | ) |
| v. | ) |
| | ) |
| UNITED PUBLIC WORKERS, AFSCME | ) |
| LOCAL 646, AFL-CIO, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| UNITED PUBLIC WORKERS, | ) |
| AFSCME LOCAL 646, AFL-CIO, | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GARY W. RODRIGUES, | ) |
| | ) |
| Third-Party Defendant. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was duly served upon the following parties at their last known address via hand delivery, on May 6, 2008:

TO:  ERIC A. SEITZ, ESQ.
LAWRENCE I. KAWASAKI, ESQ.
820 Mililani Street, Suite 714
Honolulu, Hawaii 96813

Attorneys for Third Party
Defendant Gary W. Rodrigues

JAMES E.T. KOSHIBA, ESQ.
CHARLES A. PRICE, ESQ.
KOSHIBA AGENA & KUBOTA
2600 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813

Attorneys for Defendant
UPW, AFSCME, LOCAL 646, AFL-CIO

DATED:  Honolulu, Hawaii, May 6, 2008.

_____
CLAYTON C. IKEI
JERRY P.S. CHANG

Attorneys for Plaintiff
JEANNE K. ENDO

2